**COMPUSERVE INCORPORATED,**
Plaintiff,

v.

**CYBER PROMOTIONS, INC. and
Sanford Wallace, Defendants.**

No. C2–96–1070.

United States District Court,
S.D. Ohio,
Eastern Division.

Feb. 3, 1997.

Robert W. Hamilton, Jones, Day, Reavis & Pogue, Columbus, OH, Kenneth B. Wilson and David H. Kramer, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, for Plaintiffs.

Alan Charles Witten, McShane, Breitfeller & Witten, Columbus, OH, Ralph A. Jacobs, Hoyle, Morris & Kerr, Philadelphia, PA, for Defendants.

## MEMORANDUM OPINION AND ORDER

GRAHAM, District Judge.

This case presents novel issues regarding the commercial use of the Internet, specifically the right of an online computer service to prevent a commercial enterprise from sending unsolicited electronic mail advertising to its subscribers.

Plaintiff CompuServe Incorporated ("CompuServe") is one of the major national commercial online computer services. It operates a computer communication service through a proprietary nationwide computer network. In addition to allowing access to the extensive content available within its own proprietary network, CompuServe also provides its subscribers with a link to the much larger resources of the Internet. This allows its subscribers to send and receive electronic messages, known as "e-mail," by the Internet. Defendants Cyber Promotions, Inc. and its president Sanford Wallace are in the business of sending unsolicited e-mail advertisements on behalf of themselves and their clients to hundreds of thousands of Internet users, many of whom are CompuServe subscribers. CompuServe has notified defendants that they are prohibited from using its computer equipment to process and store the unsolicited e-mail and has requested that they terminate the practice. Instead, defendants have sent an increasing volume of e-mail solicitations to CompuServe subscribers. CompuServe has attempted to employ technological means to block the flow of defendants' e-mail transmissions to its computer equipment, but to no avail.

This matter is before the Court on the application of CompuServe for a preliminary injunction which would extend the duration of the temporary restraining order issued by this Court on October 24, 1996 and which would in addition prevent defendants from sending unsolicited advertisements to CompuServe subscribers.

For the reasons which follow, this Court holds that where defendants engaged in a course of conduct of transmitting a substantial volume of electronic data in the form of unsolicited e-mail to plaintiff's proprietary computer equipment, where defendants continued such practice after repeated demands to cease and desist, and where defendants deliberately evaded plaintiff's affirmative efforts to protect its computer equipment from such use, plaintiff has a viable claim for trespass to personal property and is entitled to injunctive relief to protect its property.

### I.

The Court will begin its analysis of the issues by acknowledging, for the purpose of providing a background, certain findings of

**1018**

fact recently made by another district court in a case involving the Internet:

1. The Internet is not a physical or tangible entity, but rather a giant network which interconnects innumerable smaller groups of linked computer networks. It is thus a network of networks....

2. Some networks are "closed" networks, not linked to other computers or networks. Many networks, however, are connected to other networks, which are in turn connected to other networks in a manner which permits each computer in any network to communicate with computers on any other network in the system. This global Web of linked networks and computers is referred to as the Internet.

3. The nature of the Internet is such that it is very difficult, if not impossible, to determine its size at a given moment. It is indisputable, however, that the Internet has experienced extraordinary growth in recent years.... In all, reasonable estimates are that as many as 40 million people around the world can and do access the enormously flexible communication Internet medium. That figure is expected to grow to 200 million Internet users by the year 1999.

4. Some of the computers and computer networks that make up the network are owned by governmental and public institutions, some are owned by non-profit organizations, and some are privately owned. The resulting whole is a decentralized, global medium of communications—or "cyberspace"—that links people, institutions, corporations, and governments around the world....

....

11. No single entity—academic, corporate, governmental, or non-profit—administers the Internet. It exists and functions as a result of the fact that hundreds of thousands of separate operators of computers and computer networks independently decided to use common data transfer protocols to exchange communications and information with other computers (which in turn exchange communications and information with still other computers). There is no centralized storage location, control point, or communications channel for the Internet, and it would not be technically feasible for a single entity to control all of the information conveyed on the Internet.

*American Civil Liberties Union v. Reno*, 929 F.Supp. 824, 830–832 (E.D.Pa.1996). In 1994, one commentator noted that "advertisements on the current Internet computer network are not common because of that network's not-for-profit origins." Trotter Hardy, *The Proper Legal Regime for "Cyberspace"*, 55 U.Pitt.L.Rev. 993, 1027 (1994). In 1997, that statement is no longer true.

Internet users often pay a fee for Internet access. However, there is no per-message charge to send electronic messages over the Internet and such messages usually reach their destination within minutes. Thus electronic mail provides an opportunity to reach a wide audience quickly and at almost no cost to the sender. It is not surprising therefore that some companies, like defendant Cyber Promotions, Inc., have begun using the Internet to distribute advertisements by sending the same unsolicited commercial message to hundreds of thousands of Internet users at once. Defendants refer to this as "bulk e-mail," while plaintiff refers to it as "junk e-mail." In the vernacular of the Internet, unsolicited e-mail advertising is sometimes referred to pejoratively as "spam." [1]

CompuServe subscribers use CompuServe's domain name "CompuServe.com" together with their own unique alpha-numeric identifier to form a distinctive e-mail mailing address. That address may be used by the subscriber to exchange electronic mail with any one of tens of millions of other Internet users who have electronic mail capability. E-mail sent to CompuServe subscribers is processed and stored on CompuServe's proprietary computer equipment. Thereafter, it becomes accessible to CompuServe's subscribers, who can access CompuServe's equipment and electronically retrieve those messages.

---

1. This term is derived from a skit performed on the British television show *Monty Python's Flying Circus*, in which the word "spam" is repeated to the point of absurdity in a restaurant menu.

Over the past several months, CompuServe has received many complaints from subscribers threatening to discontinue their subscription unless CompuServe prohibits electronic mass mailers from using its equipment to send unsolicited advertisements. CompuServe asserts that the volume of messages generated by such mass mailings places a significant burden on its equipment which has finite processing and storage capacity. CompuServe receives no payment from the mass mailers for processing their unsolicited advertising. However, CompuServe's subscribers pay for their access to CompuServe's services in increments of time and thus the process of accessing, reviewing and discarding unsolicited e-mail costs them money, which is one of the reasons for their complaints. CompuServe has notified defendants that they are prohibited from using its proprietary computer equipment to process and store unsolicited e-mail and has requested them to cease and desist from sending unsolicited e-mail to its subscribers. Nonetheless, defendants have sent an increasing volume of e-mail solicitations to CompuServe subscribers.

In an effort to shield its equipment from defendants' bulk e-mail, CompuServe has implemented software programs designed to screen out the messages and block their receipt. In response, defendants have modified their equipment and the messages they send in such a fashion as to circumvent CompuServe's screening software. Allegedly, defendants have been able to conceal the true origin of their messages by falsifying the point-of-origin information contained in the header of the electronic messages. Defendants have removed the "sender" information in the header of their messages and replaced it with another address. Also, defendants have developed the capability of configuring their computer servers to conceal their true domain name and appear on the Internet as another computer, further concealing the true origin of the messages. By manipulating this data, defendants have been able to continue sending messages to CompuServe's equipment in spite of CompuServe's protests and protective efforts.

Defendants assert that they possess the right to continue to send these communications to CompuServe subscribers. CompuServe contends that, in doing so, the defendants are trespassing upon its personal property.

## II.

The grant or denial of a motion for preliminary injunction rests within the discretion of the trial court. *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 (1940). In determining whether a motion for preliminary injunction should be granted, a court must consider and balance four factors: (1) the likelihood that the party seeking the preliminary injunction will succeed on the merits of the claim; (2) whether the party seeking the injunction will suffer irreparable harm without the grant of the extraordinary relief; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest is advanced by the issuance of the injunction. *Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir.1994); *International Longshoremen's Assoc. v. Norfolk S. Corp.*, 927 F.2d 900, 903 (6th Cir.1991). None of these individual factors constitute prerequisites that must be met for the issuance of a preliminary injunction, they are instead factors that are to be balanced. *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). A preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a full trial on the merits. Indeed, "[a] party ... is not required to prove his case in full at a preliminary injunction hearing." *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981).

## III.

This Court shall first address plaintiff's motion as it relates to perpetuating the temporary restraining order filed on October 24, 1996. That order enjoins defendants from:

(i) Using CompuServe accounts or CompuServe's equipment or support services to send or receive electronic mail or messages

or in connection with the sending or receiving of electronic mail or messages;

(ii) Inserting any false reference to a CompuServe account or CompuServe equipment in any electronic message sent by Defendants; and

(iii) Falsely representing or causing their electronic mail or messages to bear the representation that any electronic mail or message sent by Defendants was sent by or originated from CompuServe or a CompuServe account.

(Temporary Restraining Order at 4).

As a general matter, the findings of this Court enunciated in its temporary restraining order are applicable to the request for preliminary injunction now at issue. The behavior described in subsections (ii) and (iii) of the temporary restraining order would be actionable as false representations or descriptions under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Also, the same behavior is actionable under the Ohio Deceptive Trade Practices Act, Ohio Rev.Code § 4165(B) and (D).

■ Defendants argue that the restrictions in the temporary restraining order are no longer necessary because defendants no longer have a CompuServe account. That being the case, a preliminary injunction perpetuating the proscribed activity articulated in subsection (i) of the temporary restraining order will present no hardship at all to defendants. Next, it does not appear that defendants would need to have a CompuServe account to perpetrate the proscribed acts articulated in subsections (ii) and (iii) of the temporary restraining order. Therefore, the fact that defendants no longer have an account with plaintiff does not vitiate the need which CompuServe has demonstrated for an injunction proscribing the acts set forth in those subsections.

For the foregoing reasons and the reasons articulated in the temporary restraining order issued by this Court, defendants Cyber Promotions, Inc. and its president Sanford Wallace are hereby enjoined from performing any of the acts therein described during the pendency of this litigation.

## IV.

This Court will now address the second aspect of plaintiff's motion in which it seeks to enjoin defendants Cyber Promotions, Inc. and its president Sanford Wallace from sending any unsolicited advertisements to any electronic mail address maintained by CompuServe.

CompuServe predicates this aspect of its motion for a preliminary injunction on the common law theory of trespass to personal property or to chattels, asserting that defendants' continued transmission of electronic messages to its computer equipment constitutes an actionable tort.

Trespass to chattels has evolved from its original common law application, concerning primarily the asportation of another's tangible property, to include the unauthorized use of personal property:

Its chief importance now, is that there may be recovery ... for interferences with the possession of chattels which are not sufficiently important to be classed as conversion, and so to compel the defendant to pay the full value of the thing with which he has interfered. Trespass to chattels survives today, in other words, largely as a little brother of conversion.

Prosser & Keeton, *Prosser and Keeton on Torts*, § 14, 85–86 (1984).

The scope of an action for conversion recognized in Ohio may embrace the facts in the instant case. The Supreme Court of Ohio established the definition of conversion under Ohio law in *Baltimore & O.R. Co. v. O'Donnell*, 49 Ohio St. 489, 32 N.E. 476, 478 (1892) by stating that:

[I]n order to constitute a conversion, it was not necessary that there should have been an actual appropriation of the property by the defendant to its own use and benefit. It might arise from the exercise of a dominion over it in exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights. If one take the property of another, for a temporary purpose only, in disregard of the owner's right, it is a conversion. Either a wrongful taking, an assumption of ownership, an illegal use or

misuse, or a wrongful detention of chattels will constitute a conversion.

*Id.* at 497–98, 32 N.E. 476; *see also Miller v. Uhl*, 37 Ohio App. 276, 174 N.E. 591 (1929); *Great American Mut. Indem. Co. v. Meyer*, 18 Ohio App. 97 (1924); 18 O. Jur.3d, Conversion § 17. While authority under Ohio law respecting an action for trespass to chattels is extremely meager, it appears to be an actionable tort. *See State of Ohio v. Herbert*, 49 Ohio St.2d 88, 119, 358 N.E.2d 1090, 1106 (1976) (dissenting opinion) ("any workable cause of action would appear to be trespass to chattels"); *see also Greenwald v. Kearns*, 104 Ohio App. 473, 145 N.E.2d 462 (1957) (trespass on the rights of plaintiff in personal property is a precursor to an act in conversion); *Simmons v. Dimitrouleas Wallcovering, Inc.*, No. 14804, 1995 WL 19136, at *2 (Ohio App. Jan.18, 1995) (the court of appeals acknowledged that trespass to chattel claims were barred because those claims were dependent upon claimant's ownership of the subject personal property); *Klinebriel v. Smith*, No. 94CA1641, 1996 WL 57947, at *2 (Ohio App. Feb.6, 1996) (where the court of appeals let stand a jury award on a "trespass against personal property" claim); *Springfield Bank v. Caserta*, 10 B.R. 57 (Bankr. S.D.Ohio 1981) (common law principles of trespass to chattels in Am.Jur.2d applied as controlling under Ohio law).

Both plaintiff and defendants cite the Restatement (Second) of Torts to support their respective positions. In determining a question unanswered by state law, it is appropriate for this Court to consider such sources as the restatement of the law and decisions of other jurisdictions. *Bailey v. V & O Press Co., Inc.*, 770 F.2d 601, 604–606 (6th Cir. 1985) (where court considered positions expressed in the Restatement (Second) of Torts in interpreting Ohio's principles of comparative negligence) *Garrison v. Jervis B. Webb Co.*, 583 F.2d 258, 262 n. 6 (1978); *see also* Wright, Miller & Cooper, *Federal Practice and Procedure*, § 4507 (West 1996).

The Restatement § 217(b) states that a trespass to chattel may be committed by intentionally using or intermeddling with the chattel in possession of another. Restatement § 217, Comment e defines physical "intermeddling" as follows:

> ... intentionally bringing about a physical contact with the chattel. The actor may commit a trespass by an act which brings him into an intended physical contact with a chattel in the possession of another[.]

Electronic signals generated and sent by computer have been held to be sufficiently physically tangible to support a trespass cause of action. *Thrifty–Tel, Inc., v. Bezenek*, 46 Cal.App.4th 1559, 1567, 54 Cal.Rptr.2d 468 (1996); *State v. McGraw*, 480 N.E.2d 552, 554 (Ind.1985) (Indiana Supreme Court recognizing in dicta that a hacker's unauthorized access to a computer was more in the nature of trespass than criminal conversion); and *State v. Riley*, 121 Wash.2d 22, 846 P.2d 1365 (1993) (computer hacking as the criminal offense of "computer trespass" under Washington law). It is undisputed that plaintiff has a possessory interest in its computer systems. Further, defendants' contact with plaintiff's computers is clearly intentional. Although electronic messages may travel through the Internet over various routes, the messages are affirmatively directed to their destination.

Defendants, citing Restatement (Second) of Torts § 221, which defines "dispossession", assert that not every interference with the personal property of another is actionable and that physical dispossession or substantial interference with the chattel is required. Defendants then argue that they did not, in this case, physically dispossess plaintiff of its equipment or substantially interfere with it. However, the Restatement (Second) of Torts § 218 defines the circumstances under which a trespass to chattels may be actionable:

> One who commits a trespass to a chattel is subject to liability to the possessor of the chattel if, but only if,
>
> (a) he dispossesses the other of the chattel, or
>
> (b) the chattel is impaired as to its condition, quality, or value, or
>
> (c) the possessor is deprived of the use of the chattel for a substantial time, or
>
> (d) bodily harm is caused to the possessor, or harm is caused to some person or thing

in which the possessor has a legally protected interest.

Therefore, an interference resulting in physical dispossession is just one circumstance under which a defendant can be found liable. Defendants suggest that "[u]nless an alleged trespasser actually takes physical custody of the property or physically damages it, courts will not find the 'substantial interference' required to maintain a trespass to chattel claim." (Defendant's Memorandum at 13). To support this rather broad proposition, defendants cite only two cases which make any reference to the Restatement. In *Glidden v. Szybiak*, 95 N.H. 318, 63 A.2d 233 (1949), the court simply indicated that an action for trespass to chattels could not be maintained in the absence of some form of damage. The court held that where plaintiff did not contend that defendant's pulling on her pet dog's ears caused any injury, an action in tort could not be maintained. *Id.* 63 A.2d at 235. In contrast, plaintiff in the present action has alleged that it has suffered several types if injury as a result of defendants' conduct. In *Koepnick v. Sears Roebuck & Co.*, 158 Ariz. 322, 762 P.2d 609 (1988) the court held that a two-minute search of an individual's truck did not amount to a "dispossession" of the truck as defined in Restatement § 221 or a deprivation of the use of the truck for a substantial time. It is clear from a reading of Restatement § 218 that an interference or intermeddling that does not fit the § 221 definition of "dispossession" can nonetheless result in defendants' liability for trespass. The *Koepnick* court did not discuss any of the other grounds for liability under Restatement § 218.

A plaintiff can sustain an action for trespass to chattels, as opposed to an action for conversion, without showing a substantial interference with its right to possession of that chattel. *Thrifty–Tel, Inc.*, 46 Cal. App.4th at 1567, 54 Cal.Rptr.2d 468 (quoting *Zaslow v. Kroenert*, 29 Cal.2d 541, 176 P.2d 1 (Cal.1946)). Harm to the personal property or diminution of its quality, condition, or value as a result of defendants' use can also be the predicate for liability. Restatement § 218(b).

An unprivileged use or other intermeddling with a chattel which results in actual impairment of its physical condition, quality or value to the possessor makes the actor liable for the loss thus caused. In the great majority of cases, the actor's intermeddling with the chattel impairs the value of it to the possessor, as distinguished from the mere affront to his dignity as possessor, only by some impairment of the physical condition of the chattel. There may, however, be situations in which the value to the owner of a particular type of chattel may be impaired by dealing with it in a manner that does not affect its physical condition. . . . In such a case, the intermeddling is actionable even though the physical condition of the chattel is not impaired.

The Restatement (Second) of Torts § 218, comment h. In the present case, any value CompuServe realizes from its computer equipment is wholly derived from the extent to which that equipment can serve its subscriber base. Michael Mangino, a software developer for CompuServe who monitors its mail processing computer equipment, states by affidavit that handling the enormous volume of mass mailings that CompuServe receives places a tremendous burden on its equipment. (Mangino Supp. Dec. at ¶ 12). Defendants' more recent practice of evading CompuServe's filters by disguising the origin of their messages commandeers even more computer resources because CompuServe's computers are forced to store undeliverable e-mail messages and labor in vain to return the messages to an address that does not exist. (Mangino Supp. Dec. at ¶¶ 7–8). To the extent that defendants' multitudinous electronic mailings demand the disk space and drain the processing power of plaintiff's computer equipment, those resources are not available to serve CompuServe subscribers. Therefore, the value of that equipment to CompuServe is diminished even though it is not physically damaged by defendants' conduct.

Next, plaintiff asserts that it has suffered injury aside from the physical impact of defendants' messages on its equipment. Restatement § 218(d) also indicates that recovery may be had for a trespass that causes

harm to something in which the possessor has a legally protected interest. Plaintiff asserts that defendants' messages are largely unwanted by its subscribers, who pay incrementally to access their e-mail, read it, and discard it. Also, the receipt of a bundle of unsolicited messages at once can require the subscriber to sift through, at his expense, all of the messages in order to find the ones he wanted or expected to receive. These inconveniences decrease the utility of CompuServe's e-mail service and are the foremost subject in recent complaints from CompuServe subscribers. Patrick Hole, a customer service manager for plaintiff, states by affidavit that in November 1996 CompuServe received approximately 9,970 e-mail complaints from subscribers about junk e-mail, a figure up from approximately two hundred complaints the previous year. (Hole 2d Supp. Dec. at ¶ 4). Approximately fifty such complaints per day specifically reference defendants. (Hole Supp. Dec. at ¶ 3). Defendants contend that CompuServe subscribers are provided with a simple procedure to remove themselves from the mailing list. However, the removal procedure must be performed by the e-mail recipient at his expense, and some CompuServe subscribers complain that the procedure is inadequate and ineffectual. (*See, e.g.,* Hole Supp. Dec. at ¶ 8).

■ Many subscribers have terminated their accounts specifically because of the unwanted receipt of bulk e-mail messages. (Hole Supp. Dec. at ¶ 9, Hole 2d Supp. Dec. at ¶ 6). Defendants' intrusions into CompuServe's computer systems, insofar as they harm plaintiff's business reputation and goodwill with its customers, are actionable under Restatement § 218(d).

The reason that the tort of trespass to chattels requires some actual damage as a *prima facie* element, whereas damage is assumed where there is a trespass to real property, can be explained as follows:

> The interest of a possessor of a chattel in its inviolability, unlike the similar interest of a possessor of land, is not given legal protection by an action for nominal damages for harmless intermeddlings with the chattel. In order that an actor who interferes with another's chattel may be liable, his conduct must affect some other and more important interest of the possessor. Therefore, one who intentionally intermeddles with another's chattel is subject to liability only if his intermeddling is harmful to the possessor's materially valuable interest in the physical condition, quality, or value of the chattel, or if the possessor is deprived of the use of the chattel for a substantial time, or some other legally protected interest of the possessor is affected as stated in Clause (c). *Sufficient legal protection of the possessor's interest in the mere inviolability of his chattel is afforded by his privilege to use reasonable force to protect his possession against even harmless interference.*

Restatement (Second) of Torts § 218, Comment e (emphasis added). Plaintiff CompuServe has attempted to exercise this privilege to protect its computer systems. However, defendants' persistent affirmative efforts to evade plaintiff's security measures have circumvented any protection those self-help measures might have provided. In this case CompuServe has alleged and supported by affidavit that it has suffered several types of injury as a result of defendants' conduct. The foregoing discussion simply underscores that the damage sustained by plaintiff is sufficient to sustain an action for trespass to chattels. However, this Court also notes that the implementation of technological means of self-help, to the extent that reasonable measures are effective, is particularly appropriate in this type of situation and should be exhausted before legal action is proper.

Under Restatement § 252, the owner of personal property can create a privilege in the would-be trespasser by granting consent to use the property. A great portion of the utility of CompuServe's e-mail service is that it allows subscribers to receive messages from individuals and entities located anywhere on the Internet. Certainly, then, there is at least a tacit invitation for anyone on the Internet to utilize plaintiff's computer

equipment to send e-mail to its subscribers.[2] *Buchanan Marine, Inc. v. McCormack Sand Co.,* 743 F.Supp. 139 (E.D.N.Y.1990) (whether there is consent to community use is a material issue of fact in an action for trespass to chattels). However, in or around October 1995, CompuServe employee Jon Schmidt specifically told Mr. Wallace that he was "prohibited from using CompuServe's equipment to send his junk e-mail messages." (Schmidt Dec. at ¶ 5). There is apparently some factual dispute as to this point, but it is clear from the record that Mr. Wallace became aware at about this time that plaintiff did not want to receive messages from Cyber Promotions and that plaintiff was taking steps to block receipt of those messages. (Transcript of December 15, 1996 Hearing at 81–86).

■ Defendants argue that plaintiff made the business decision to connect to the Internet and that therefore it cannot now successfully maintain an action for trespass to chattels. Their argument is analogous to the argument that because an establishment invites the public to enter its property for business purposes, it cannot later restrict or revoke access to that property, a proposition which is erroneous under Ohio law. *See, e.g.,* *State v. Carriker,* 5 Ohio App.2d 255, 214 N.E.2d 809 (1964) (the law in Ohio is that a business invitee's privilege to remain on the premises of another may be revoked upon the reasonable notification to leave by the owner or his agents); *Allstate Ins. Co. v. U.S. Associates Realty, Inc.,* 11 Ohio App.3d 242, 464 N.E.2d 169 (1983) (notice of express restriction or limitation on invitation turns business invitee into trespasser). On or around October 1995, CompuServe notified defendants that it no longer consented to the use of its proprietary computer equipment. Defendants' continued use thereafter was a trespass. Restatement (Second) of Torts §§ 252 and 892A(5); *see also* Restatement (Second) of Torts § 217, Comment f ("The actor may commit a new trespass by continuing an intermeddling which he has already begun, with or without the consent of the person in possession. Such intermeddling may persist after the other's consent, originally given, has been terminated."); Restatement (Second) of Torts § 217, Comment g.

■ Further, CompuServe expressly limits the consent it grants to Internet users to send e-mail to its proprietary computer systems by denying unauthorized parties the use of CompuServe equipment to send unsolicited electronic mail messages. (Kolehmainen Dec. at ¶ 2). This policy statement, posted by CompuServe online, states as follows:

> Compuserve is a private online and communications services company. CompuServe does not permit its facilities to be used by unauthorized parties to process and store unsolicited e-mail. If an unauthorized party attempts to send unsolicited messages to e-mail addresses on a CompuServe service, Compuserve will take appropriate action to attempt to prevent those messages from being processed by CompuServe. Violations of CompuServe's policy prohibiting unsolicited e-mail should be reported to . . . .

*Id.* at ¶¶ 2 and 3. Defendants Cyber Promotions, Inc. and its president Sanford Wallace have used plaintiff's equipment in a fashion that exceeds that consent. The use of personal property exceeding consent is a trespass. *City of Amsterdam v. Daniel Goldreyer, Ltd.,* 882 F.Supp. 1273 (E.D.N.Y. 1995); Restatement (Second) of Torts § 256. It is arguable that CompuServe's policy statement, insofar as it may serve as a limitation upon the scope of its consent to the use of its computer equipment, may be insufficiently communicated to potential third-party users when it is merely posted at some location on the network. However, in the present case the record indicates that defendants were actually notified that they were using CompuServe's equipment in an unacceptable manner. To prove that a would-be trespasser acted with the intent required to support liability in tort it is crucial that defendant be placed on notice that he is trespassing.

---

**2.** That consent is apparently subject to express limitations. *See* Kolehmainen Dec. at ¶ 2 and discussion *infra.*

■ As a general matter, the public possesses a privilege to reasonably use the facilities of a public utility, Restatement (Second) of Torts § 259, but Internet service providers have been held not to be common carriers. *Religious Technology Center v. Netcom On–Line Communication Services, Inc.*, 907 F.Supp. 1361 (N.D.Cal.1995). The definition of public utility status under Ohio law was recently articulated in *A & B Refuse Disposers, Inc. v. Bd. Of Ravenna Township Trustees*, 64 Ohio St.3d 385, 596 N.E.2d 423 (1992). The Ohio Supreme Court held that the determination of whether an entity is a "public utility" requires consideration of several factors relating to the "public service" and "public concern" characteristics of a public utility. *Id.* 596 N.E.2d at 426. The public service characteristic contemplates an entity which devotes an essential good or service to the general public which the public in turn has a legal right to demand or receive. *Id.* at 425. CompuServe's network, Internet access and electronic mail services are simply not essential to society. There are many alternative forms of communication which are customarily used for the same purposes. Further, only a minority of society at large has the equipment to send and receive e-mail messages via the Internet, and even fewer actually do. The second characteristic of a public utility contemplates an entity which conducts its operations in such manner as to be a matter of public concern, that is, a public utility normally occupies a monopolistic or ogopolistic position in the relevant marketplace. *Id.* at 425–426. Defendants estimate that plaintiff serves some five million Internet users worldwide. However, there are a number of major Internet service providers that have very large subscriber bases, and with a relatively minor capital investment, anyone can acquire the computer equipment necessary to provide Internet access services on a smaller scale. Furthermore, Internet users are not a "captive audience" to any single service provider, but can transfer from one service to another until they find one that best suits their needs. Finally, the Ohio Supreme Court made clear that a party asserting public utility status is required to support that assertion with evidence going to the relevant aforementioned

factors. *Id.* 596 N.E.2d at 427. Defendants have not argued that CompuServe is a public utility, much less produced evidence tending to support such a conclusion. Therefore, CompuServe is not a public utility as that status is defined under Ohio law and defendants can not be said to enjoy a special privilege to use CompuServe's proprietary computer systems.

In response to the trespass claim, defendants argue that they have the right to continue to send unsolicited commercial e-mail to plaintiff's computer systems under the First Amendment to the United States Constitution. The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press." The United States Supreme Court has recognized that "the constitutional guarantee of free speech is a guarantee only against abridgement by government, federal or state." *Hudgens v. NLRB*, 424 U.S. 507, 513, 96 S.Ct. 1029, 1033, 47 L.Ed.2d 196 (1976). Indeed, the protection of the First Amendment is not a shield against "merely private conduct." *Hurley v. Irish–American Gay Group of Boston*, 515 U.S. 557, ——, 115 S.Ct. 2338, 2344, 132 L.Ed.2d 487 (1995) (citation omitted).

■ Very recently, in an action filed by Cyber Promotions, Inc. against America Online, Inc. ("AOL") the United States District Court for the Eastern District of Pennsylvania held that AOL, a company selling services that are similar to those of CompuServe, is private actor. *Cyber Promotions, Inc. v. American Online, Inc.*, 948 F.Supp. 436, 443–44 (E.D.Pa.1996). That case involved the question of whether Cyber Promotions had the First Amendment right to send unobstructed e-mail to AOL subscribers. The court held that Cyber Promotions had no such right and that, *inter alia*, AOL was not exercising powers that are traditionally the exclusive prerogative of the state, such as where a private company exercises municipal powers by running a company town. *Id.* at 442–43; *Blum v. Yaretsky*, 457 U.S. 991, 1004–05, 102 S.Ct. 2777, 2785–86, 73 L.Ed.2d 534 (1982); *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946).

This Court agrees with the conclusions reached by the United States District Court for the Eastern District of Pennsylvania.

■ In the present action, CompuServe is a private company. Moreover, the mere judicial enforcement of neutral trespass laws by the private owner of property does not alone render it a state actor. Rotunda & Nowak, *Treatise on Constitutional Law* § 16.3, 546 (West 1992). Defendants do not argue that CompuServe is anything other than a private actor. Instead, defendants urge that because CompuServe is so intimately involved in this new medium it might be subject to some special form of regulation. Defendants cite *Associated Press v. United States*, 326 U.S. 1, 65 S.Ct. 1416, 89 L.Ed. 2013 (1945), and *Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994), which stand for the proposition that when a private actor has a certain quantum of control over a central avenue of communication, then the First Amendment might not prevent the government from enacting legislation requiring public access to private property. No such legislation yet exists that is applicable to CompuServe. Further, defendants' discussion concerning the extent to which the Internet may be regulated (or should be regulated) is irrelevant because no government entity has undertaken to regulate the Internet in a manner that is applicable to this action. Indeed, if there were some applicable statutory scheme in place this Court would not be required to apply paradigms of common law to the case at hand.

In *Lloyd Corp. v. Tanner*, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972), protestors of the Vietnam War sought to pass out written materials in a private shopping center. Even though the customers of the shopping center were the intended recipients of the communication, the Supreme Court held that allowing the First Amendment to trump private property rights is unwarranted where there are adequate alternative avenues of communication. *Id.* at 567, 92 S.Ct. at 2228. The Supreme Court stated that:

> Although ... the courts properly have shown a special solicitude for the guarantees of the First Amendment, *this Court has never held that a trespasser or an uninvited guest may exercise general rights of free speech on property privately owned and used nondiscriminatorily for private purposes only.*

*Id.* at 567–68, 92 S.Ct. at 2228 (emphasis added). Defendants in the present action have adequate alternative means of communication available to them. Not only are they free to send e-mail advertisements to those on the Internet who do not use CompuServe accounts, but they can communicate to CompuServe subscribers as well through online bulletin boards, web page advertisements, or facsimile transmissions, as well as through more conventional means such as the U.S. mail or telemarketing. Defendants' contention, referring to the low cost of the electronic mail medium, that there are no *adequate* alternative means of communication is unpersuasive. There is no constitutional requirement that the incremental cost of sending massive quantities of unsolicited advertisements must be borne by the recipients. The legal concept in *Lloyd* that private citizens are entitled to enforce laws of trespass against would-be communicators is applicable to this case.

Defendants assert that CompuServe has assumed the role of a postmaster, to whom all of the strictures of the First Amendment apply, and that to allow it to enjoy a legally protected interest in its computer equipment in this context is to license a form of censorship which violates the First Amendment. However, such an assertion must be accompanied by a showing that CompuServe is a state actor. As earlier mentioned, defendants have neither specifically argued this point nor provided any evidence to support it. CompuServe is entitled to restrict access to its private property.

"The First and Fourteenth Amendments have never been treated as absolutes. Freedom of speech or press does not mean that one can talk or distribute where, when and how one chooses." *Breard v. City of Alexandria*, 341 U.S. 622, 642, 71 S.Ct. 920, 932, 95 L.Ed. 1233 (1951) (upholding local ordinances banning commercial solicitations over First Amendment objections) (footnote omitted). In *Rowan v. U.S. Post Office Dept.*, 397 U.S.

728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970) the United States Supreme Court held that the First Amendment did not forbid federal legislation that allowed addressees to remove themselves from mailing lists and stop all future mailings. The Court stated that the "mailer's right to communicate must stop at the mailbox of an unreceptive addressee.... [t]o hold less would be to license a form of trespass[.]" *Id.* at 736–37, 90 S.Ct. at 1490.

In *Tillman v. Distribution Sys. Of America, Inc.*, 224 A.D.2d 79, 648 N.Y.S.2d 630 (1996) the plaintiff complained that the defendant continued to throw newspapers on his property after being warned not to do so. The court held that the defendant newspaper distributor had no First Amendment right to continue to throw newspapers onto the property of the plaintiff. After discussing the Supreme Court cases of *Rowan* and *Breard, supra,* the court pointed out that:

> The most critical and fundamental distinction between the cases cited above, on the one hand, and the present case, on the other, is based on the fact that here we are not dealing with a government agency which seeks to preempt in some way the ability of a publisher to contact a potential reader; rather, we are dealing with a reader who is familiar with a publisher's product, and who is attempting to prevent the unwanted dumping of this product on his property. None of the cases cited by the defendants stands for the proposition that the Free Speech Clause prohibits such a landowner from resorting to his common-law remedies in order to prevent such unwanted dumping. There is, in our view, nothing in either the Federal or State Constitutions which requires a landowner to tolerate a trespass whenever the trespasser is a speaker, or the distributor of written speech, who is unsatisfied with the fora which may be available on public property, and who thus attempts to carry his message to private property against the will of the owner.

*Id.* 648 N.Y.S.2d at 635. The court concluded, relying on *Lloyd, supra,* that the property rights of the private owner could not be overwhelmed by the First Amendment. *Id.* 648 N.Y.S.2d at 636.

In the present case, plaintiff is physically the recipient of the defendants' messages and is the owner of the property upon which the transgression is occurring. As has been discussed, plaintiff is not a government agency or state actor which seeks to preempt defendants' ability to communicate but is instead a private actor trying to tailor the nuances of its service to provide the maximum utility to its customers.

Defendants' intentional use of plaintiff's proprietary computer equipment exceeds plaintiff's consent and, indeed, continued after repeated demands that defendants cease. Such use is an actionable trespass to plaintiff's chattel. The First Amendment to the United States Constitution provides no defense for such conduct.

Plaintiff has demonstrated a likelihood of success on the merits which is sufficient to warrant the issuance of the preliminary injunction it has requested.

As already discussed at some length, plaintiff has submitted affidavits supporting its contention that it will suffer irreparable harm without the grant of the preliminary injunction. As an initial matter, it is important to point out that the Court may accept affidavits as evidence of irreparable harm. *Wounded Knee Legal Defense/Offense Committee v. Federal Bureau of Investigation,* 507 F.2d 1281, 1287 (8th Cir.1974); *see generally* Wright, Miller & Kane, *Federal Practice and Procedure* § 2949, at 218–220 (West 1995). Defendants suggest that there are other reasons why CompuServe subscribers terminate their accounts, but do not offer any evidence which contradicts plaintiff's affidavits.

Normally, a preliminary injunction is not appropriate where an ultimate award of monetary damages will suffice. *Montgomery v. Carr,* 848 F.Supp. 770 (S.D.Ohio 1993). However, money damages are only adequate if they can be reasonably computed and collected. Plaintiff has demonstrated that defendants' intrusions into their computer systems harm plaintiff's business reputation and goodwill. This is the sort of injury that warrants the issuance of a preliminary injunction because the actual loss

is impossible to compute. *Basicomputer Corp. v. Scott,* 973 F.2d 507 (6th Cir.1992); *Economou v. Physicians Weight Loss Centers of America,* 756 F.Supp. 1024 (N.D.Ohio 1991).

Plaintiff has shown that it will suffer irreparable harm without the grant of the preliminary injunction.

It is improbable that granting the injunction will cause substantial harm to defendant. Even with the grant of this injunction, defendants are free to disseminate their advertisements in other ways not constituting trespass to plaintiff's computer equipment. Further, defendants may continue to send electronic mail messages to the tens of millions of Internet users who are not connected through CompuServe's computer systems.

Finally, the public interest is advanced by the Court's protection of the common law rights of individuals and entities to their personal property. Defendants raise First Amendment concerns and argue that an injunction will adversely impact the public interest. High volumes of junk e-mail devour computer processing and storage capacity, slow down data transfer between computers over the Internet by congesting the electronic paths through which the messages travel, and cause recipients to spend time and money wading through messages that they do not want. It is ironic that if defendants were to prevail on their First Amendment arguments, the viability of electronic mail as an effective means of communication for the rest of society would be put at risk. In light of the foregoing discussion, those arguments are without merit. Further, those subscribing to CompuServe are not injured by the issuance of this injunction. Plaintiff has made a business decision to forbid Cyber Promotions and Mr. Wallace from using its computers to transmit messages to CompuServe subscribers. If CompuServe subscribers are unhappy with that decision, then they may make that known, perhaps by terminating their accounts and transferring to an Internet service provider which accepts unsolicited e-mail advertisements. That is a business risk which plaintiff has assumed.

Having considered the relevant factors, this Court concludes that the preliminary injunction that plaintiff requests is appropriate.

### V.

Based on the foregoing, plaintiff's motion for a preliminary injunction is GRANTED. The temporary restraining order filed on October 24, 1996 by this Court is hereby extended in duration until final judgment is entered in this case. Further, defendants Cyber Promotions, Inc. and its president Sanford Wallace are enjoined from sending any unsolicited advertisements to any electronic mail address maintained by plaintiff CompuServe during the pendency of this action.

It is so ORDERED.