**AMERICA ONLINE, INC., Plaintiff,**

v.

**LCGM, INC., et al., Defendants.**

**No. Civ.A. 98–102–A.**

United States District Court, E.D. Virginia.

Nov. 10, 1998.

clusive remedy for employee injuries arising out of and in the course of employment.

Jon Linden Praed—Latham & Watkins, Washington, D.C., for plaintiff.

Haig Vahan Kalbian—Law Office of Haig Kalbian, Washington, D.C., for defendant.

## MEMORANDUM OPINION

LEE, District Judge.

This matter is before the Court on plaintiff's Motion for Summary Judgment as to each of the seven counts in the complaint. Plaintiff America Online, Inc. (AOL) complains that defendants sent large numbers of unauthorized and unsolicited bulk e-mail advertisements ("spam") to its members (AOL members).[1] AOL's complaint has

seven counts: Count I (False Designation of Origin under the Lanham Act); Count II (Dilution of Interest in Service Marks under the Lanham Act); Count III (Exceeding Authorized Access in Violation of the Computer Fraud and Abuse Act); Count IV (Impairing Computer Facilities in Violation of the Computer Fraud and Abuse Act); Count V (Violations of the Virginia Computer Crimes Act); Count VI (Trespass to Chattels under the Common Law of Virginia); and Count VII (Common Law Conspiracy to Commit Trespass to Chattels and Violate Federal and Virginia Statutes). Plaintiff seeks compensatory and punitive damages, attorney's fees, costs, and permanent injunctive relief. After reviewing the evidence appropriately before this Court, the Court concludes that there are no genuine issues of material fact in regard to Counts I, II, III, IV, V, and VI, but that such issues remain as to Count VII as well as the issue of damages. Therefore, the Court grants summary judgment in favor of plaintiff on Counts I through VI and denies plaintiff's motion on Count VII and on the issue of damages for the reasons that follow.

## I. Summary Judgment Standard and Application in the Instant Case

Summary judgment is proper when the record conclusively demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Where the evidence of the parties is at issue, the evidence of the nonmoving party is to be believed. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). For the nonmoving party to avoid summary judgment, the evidence, when

---

1. "Spam" is unsolicited commercial bulk e-mail akin to "junk mail" sent through the postal mail. The transmission of spam is a practice widely condemned in the Internet Community. *Hotmail Corp. v. Van$ Money Pie Inc., et al.,* 47 U.S.P.Q.2d 1020, 1998 WL 388389 (N.D.Cal.1998). For a discussion of spamming and the emerging case law in this area, *see generally* Susan E. Gindin, *Lost and Found in Cyberspace: Informational Privacy in the Age of the Internet,* 32 San Diego L.Rev. 1153 (1997); Anne E. Hawley, Comment, *Taking Spam Out of Your Cyberspace Diet: Common Law Applied to Bulk Unsolicited Advertising Via Electronic Mail,* 66 UMKC L.Rev. 381 (1997).

viewed in the light most favorable to that party, must be sufficient for a reasonable jury to find in its favor. *Id.* at 252, 106 S.Ct. 2505. The summary judgment standard is satisfied when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of his pleading, but his response ... must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Fed.R.Civ.P. 56(e).

The scope of submissions examined under the summary judgment standard is limited in the instant case by an order by Judge Poretz, filed August 14, 1998. In that order, Judge Poretz granted in part and denied in part plaintiff's Motion for Terminating Sanctions Based on Defendants' History of Discovery Abuses. In a hearing held that same day, Judge Poretz found that defendants "have failed to make [d]iscovery" without substantial justification. *Transcript from Hearing before Judge Poretz* at 21, Civil Action No. 98–102–A, August 14, 1998. Defendants had already been sanctioned more than once for their discovery abuses. In the hearing before Judge Poretz, plaintiff argued that defendants should be sanctioned because defendants Sharrak and Drakos made a blanket assertion of their Fifth Amendment rights during their depositions and refused to answer any questions concerning the identity of the corporate defendants' 30(b)(6) representatives. Judge Poretz found that defendants had not been substantially justified in failing to make discovery because

> there are no criminal charges against the personal or corporate Defendants; the personal or corporate Defendants

have not been advised that they are the targets of a criminal investigation. All I have before me is a representation that Defendants, corporate and personal, have an inchoate fear or expectation that some authority, in some jurisdiction, at some time, may make some charge against them. It is because of that ambiguous nature—and that's all I have on the record before me—that I find that they are not substantially justified in refusing to make [d]iscovery.

*Id.* at 22. Judge Poretz imposed several sanctions under Fed.R.Civ.P. 37(b), including the sanction that "defendants are not permitted to oppose plaintiff's claims or raise defenses," pursuant to Fed.R.Civ.P. 37(b)(2)(B). Judge Poretz's order precludes defendants from raising claims or defenses in response to plaintiff's Motion for Summary Judgment. Thus, only those claims and defenses raised by defendants before August 14, 1998 can be considered by the Court in determining whether defendants have satisfied their burden under Rule 56.

## II. Findings of Fact and Conclusions of Law

AOL, an Internet service provider located in the Eastern District of Virginia, provides a proprietary, content-based online service that provides its members (AOL members) access to the Internet and the capability to receive as well as send e-mail messages. AOL registered "AOL" as a trademark and service mark in 1996 and has registered its domain name "aol.com" with the InterNIC. At the time this cause of action arose, defendant LCGM, Inc. was a Michigan corporation which operated and transacted business from Internet domains offering pornographic web sites. Plaintiff alleges that defendant Web Promo is a d/b/a designation for FSJD, Inc., a Michigan corporation that operates Internet domains offering pornographic web sites. Defendant Francis Sharrak was the vice-president of Web Promo and the sole shareholder and president of LCGM. Defendant James Drakos was the president

of Web Promo. Defendants Francis Sharrak and James Drakos have participated in the transmission of the bulk e-mails. *See LCGM and Web Promo's Response to Interrogatory 22.*

AOL alleges that defendants, in concert, sent unauthorized and unsolicited bulk e-mail advertisements ("spam") to AOL customers. AOL's Unsolicited Bulk E-mail Policy and its Terms of Service bar both members and nonmembers from sending bulk e-mail through AOL's computer systems. Plaintiff estimates that defendants, in concert with their "site partners," transmitted more than 92 million unsolicited and bulk e-mail messages advertising their pornographic Web sites to AOL members from approximately June 17, 1997 to January 21, 1998. Plaintiff bases this number on defendants' admissions that they sent approximately 300,000 e-mail messages a day at various intervals from their Michigan offices. *See LCGM and Web Promo's Answers to Document Request 12; Sharrak and Drakos' Answers to Document Request 16.* Plaintiff asserts that defendants provided AOL with computer disks containing a list of the addresses of 820,-296 AOL members to whom defendants admitted to transmitting bulk e-mail.

Plaintiff alleges that defendants harvested, or collected, the e-mail addresses of AOL members in violation of AOL's Terms of Service. Defendants have admitted to maintaining AOL memberships to harvest or collect the e-mail addresses of other AOL members. *See Defendants' Answer,* para 63. Defendants have admitted to maintaining AOL accounts and to using the AOL Collector and E-mail Pro/Stealth Mailer extractor programs to collect the e-mail addresses of AOL members, alleging that they did so in targeted adult AOL chat rooms. *See LCGM and Web Promo's Answers to Document Request 3. See Sharrak and Drakos' Answers to Document Requests 4 and 20.* Defendants have admitted to using this software to evade AOL's filtering mechanisms. *See Sharrak*

*and Drakos' Answers to Document Request 16.*

Plaintiff alleges that defendants forged the domain information "aol.com" in the "from" line of e-mail messages sent to AOL members. Defendants have admitted to creating the domain information "aol.com" through an e-mail sending program, and to causing the AOL domain to appear in electronic header information of its commercial e-mails. *See LCGM and Web Promo's Answers to Document Request 17; Sharrak and Drakos' Answers to Document Requests 13 and 21. LCGM and Web Promo's Answers to Interrogatory 14.* Plaintiffs assert that as a result, many AOL members expressed confusion about whether AOL endorsed defendants' pornographic Web sites or their bulk e-mailing practices. Plaintiff also asserts that defendants e-mail messages were sent through AOL's computer networks. Defendants have admitted to sending e-mail messages from their computers through defendants' network via e-mail software to AOL, which then relayed the messages to AOL members. *See LCGM and Web Promo's Answers to Document Request 14.*

Plaintiff alleges that AOL sent defendants two cease and desist letters, dated respectively December 8, 1997 and December 30, 1997, but that defendants continued their e-mailing practices to AOL members after receiving those letters. Defendants have admitted to receiving those letters, contending that any e-mails sent after such receipt were "lawful." *See Defendants Answer,* para 46–47.

Plaintiff alleges that defendants paid their "site partners" to transmit unsolicited bulk e-mail on their behalf and encouraged these site partners to advertise. Plaintiff further alleges that defendants conspired with CN Productions, another pornographic e-mailer, to transmit bulk e-mails to AOL members. Plaintiff alleges that many e-mails sent by defendants contained Hyper–Text Links both to defendants' web sites and CN Production's web sites.

Plaintiff alleges that defendants' actions injured AOL by consuming capacity on AOL's computers, causing AOL to incur technical costs, impairing the functioning of AOL's e-mail system, forcing AOL to upgrade its computer networks to process authorized e-mails in a timely manner, damaging AOL's goodwill with its members, and causing AOL to lose customers and revenue. Plaintiff asserts that between the months of December 1997 and April 1998, defendants' unsolicited bulk e-mails generated more than 450,000 complaints by AOL members.

## Count I: False Designation of Origin Under the Lanham Act

The undisputed facts establish that defendants violated 15 U.S.C. § 1125(a)(1) of the Lanham Act, which makes it unlawful to use in commerce:

any false designation of origin ... which ... is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

The unauthorized sending of bulk e-mails has been held to constitute a violation of this section of the Lanham Act. *America Online, Inc. v. IMS, et al.*, Civil Action No. 98–11–A (E.D.Va.1998); *See also Hotmail Corp. v. Van$ Money Pie Inc., et al.*, 47 U.S.P.Q.2d 1020, 1998 WL 388389 (N.D.Cal.1998) (granting injunction where plaintiff was likely to prevail on the merits under the Lanham Act). The elements necessary to establish a false designation violation under the Lanham Act are as follows: (1) a defendant uses a designation; (2) in interstate commerce; (3) in connection with goods and services; (4) which designation is likely to cause confusion, mistake or deception as to origin, sponsorship, or approval of defendant's goods or services; and (5) plaintiff has been or is likely to be damaged by these acts. *See First Keystone Federal Savings*

*Bank v. First Keystone Mortgage, Inc.* 923 F.Supp. 693, 707 (E.D.Pa.1996).

Each of the false designation elements has been satisfied. First, defendants clearly used the "aol.com" designation, incorporating the registered trademark and service mark AOL in their e-mail headers. Second, defendants' activities involved interstate commerce because all e-mails sent to AOL members were routed from defendants' computers in Michigan through AOL's computers in Virginia. Third, the use of AOL's designation was in connection with goods and services as defendants' e-mails advertised their commercial web sites. Fourth, the use of "aol.com" in defendants' e-mails was likely to cause confusion as to the origin and sponsorship of defendants' goods and services. Any e-mail recipient could logically conclude that a message containing the initials "aol.com" in the header would originate from AOL's registered Internet domain, which incorporates the registered mark "AOL." *AOL v. IMS*, CA 98–11–A. The recipient of such a message would be led to conclude the sender was an AOL member or AOL, the Internet Service Provider. Indeed, plaintiff alleges that this designation did cause such confusion among many AOL members, who believed that AOL sponsored and authorized defendants' bulk e-mailing practices and pornographic web sites. Finally, plaintiff asserts that these acts damaged AOL's technical capabilities and its goodwill. The defendants are precluded from opposing these claims due to their failure to comply with discovery orders. Therefore, there is no genuine issue of material fact in regards to this Count, and the Court holds the plaintiff is entitled to summary judgment on Count I.

## Count II: Dilution of Interest in Service Marks Under the Lanham Act

The undisputed facts establish that defendants violated 15 U.S.C. § 1125(c)(1) of the Lanham Act, also known as the Federal Trademark Dilution Act of 1995, which provides relief to an owner of a

mark whose mark or trade name is used by another person in commerce "if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark." The legislative history of the Act indicates that it was intended to address Internet domain name issues. *Intermatic Inc. v. Toeppen,* 947 F.Supp. 1227, 1238 (N.D.Ill.1996) (granting summary judgment to Intermatic, Inc. on its Lanham Act dilution claim against defendant who had registered "intermatic.com" as its domain name).[2] United States Senator Leahy, in discussing the Act, stated that

> ... it is my hope that this antidilution statute can help stem the use of *deceptive Internet addresses* taken by those who are choosing marks that are associated with the products and reputations of others [emphasis added].

*Id.* (quoting 141 Cong.Rec. S19312–01 (daily ed. December 29, 1995) (statement of Senator Leahy)). Moreover, this Court has found the unauthorized sending of bulk e-mails constitutes a violation of Section 1125(c)(1) of the Lanham Act. *AOL v. IMS,* CA 98–11–A; *see also Hotmail,* 47 U.S.P.Q.2d 1020, 1998 WL 388389 (court granted injunction, finding plaintiffs were likely to prevail on the merits under this section of the Act).

 Plaintiff has satisfied the two elements necessary to establish a dilution claim: "(1) the ownership of a distinctive mark, and (2) a likelihood of dilution." *Hormel Foods Corp. v. Jim Henson Productions, Inc.,* 73 F.3d 497, 506 (2d Cir. 1996) (applying New York's anti-dilution statute). Plaintiff's "AOL" mark qualifies as a distinctive mark. The "AOL" mark is registered on the principal register of the United States Patent and Trademark Office. Furthermore, the mark is recognized throughout the world in association with AOL's online products and services. Dilution can be established by "tarnishment."

"The sine qua non of tarnishment is a finding that plaintiff's mark will suffer negative associations through defendant's use." *Id.* at 507. Plaintiff contends that the "AOL" mark is a valuable business asset to plaintiff. Plaintiff argues that the "AOL" mark is tarnished, and thus diluted, by association with defendants' bulk e-mail practices and submits thousands of member complaints about defendants' e-mails as evidence of tarnishment.

## Count III: Exceeding Authorized Access in Violation of the Computer Fraud and Abuse Act

 The facts before the Court establish that defendants violated 18 U.S.C. § 1030(a)(2)(C) of the Computer Fraud and Abuse Act, which prohibits individuals from "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] information from any protected computer if the conduct involved an interstate or foreign communication." Defendants' own admissions satisfy the Act's requirements. Defendants have admitted to maintaining an AOL membership and using that membership to harvest the e-mail addresses of AOL members. Defendants have stated that they acquired these e-mail addresses by using extractor software programs. Defendants' actions violated AOL's Terms of Service, and as such was unauthorized. Plaintiff contends that the addresses of AOL members are "information" within the meaning of the Act because they are proprietary in nature. Plaintiff asserts that as a result of defendants' actions, it suffered damages exceeding $5,000, the statutory threshold requirement.

## Count IV: Impairing Computer Facilities In Violation of the Computer Fraud and Abuse Act

 The undisputed facts establish that defendants violated 18 U.S.C.

---

**2.** For a discussion of other cases involving trademark infringement and domain names, *See* John F. Delaney & Adam Lichstein, *The*

*Law of the Internet: A Summary of U.S. Internet Caselaw and Legal Developments,* 505 PLI/Pat 79, 118 (1998).

§ 1030(a)(5)(C) of the Computer Fraud and Abuse Act, which prohibits anyone from "intentionally access[ing] a protected computer without authorization, and as a result of such conduct, causes damage." Another court found that spamming was an actionable claim under this Act. *See Hotmail*, 47 U.S.P.Q.2d 1020, 1998 WL 388389 (granting injunction to Hotmail because it was likely to prevail on the merits under this statute). Defendants have admitted to utilizing software to collect AOL members' addresses. These actions were unauthorized because they violated AOL's Terms of Service. Defendants' intent to access a protected computer, in this case computers within AOL's network, is clear under the circumstances. Defendants' access of AOL's computer network enabled defendants to send large numbers of unsolicited bulk e-mail messages to AOL members.

In addition to defendants' admissions, plaintiff alleges that by using the domain information "aol.com" in their e-mails, defendants and their "site partners" camouflaged their identities, and evaded plaintiff's blocking filters and its members' mail controls. Defendants have admitted to using extractor software to evade AOL's filtering mechanisms. As a result of these actions, plaintiff asserts damages to its computer network, reputation and goodwill in excess of the minimum $5,000 statutory requirement.

### Count V: Violations of the Virginia Computer Crimes Act

■ The facts presented to the Court establish that defendants violated the Virginia Computer Crimes Act, Va.Code § 18.2–152.3(3), which provides that "[a]ny person who uses a computer or computer network without authority and with the intent to [c]onvert the property of another shall be guilty of the crime of computer fraud." Section 18.2–152.12 authorizes a private right of action for violations of the

Act. Defendants have admitted to causing "aol.com" to appear in the electronic header information of e-mail messages which they sent. Sending such messages through AOL's computer network was unauthorized. Plaintiff alleges that defendants intended to obtain services by false pretenses and to convert AOL's property. Plaintiff alleges that the inclusion of false domain information in defendants' e-mails enabled defendants to escape detection by plaintiff's blocking filters and its members' mail controls. Plaintiff argues that as a result, defendants illegitimately obtained the unauthorized service of plaintiff's mail delivery system and obtained free advertising from AOL because AOL, not defendants, bore the costs of sending these messages. There are no genuine issues for trial with respect to this Count. As such, plaintiff's Motion for Summary Judgment must be granted on Count V.

### Count VI: Trespass to Chattels under the Common Law of Virginia

■ The undisputed facts establish that defendants' actions constituted a trespass to chattels under Virginia common law. Courts have recognized that the transmission of unsolicited bulk e-mails can constitute a trespass to chattels. *See AOL v. IMS*, CA 98–11–A (finding that spammers committed a trespass to chattels in violation of Virginia Common Law at summary judgment stage); *Hotmail*, 47 U.S.P.Q.2d 1020, 1998 WL 388389 (granting a preliminary injunction because plaintiff was likely to succeed on the merits on a theory of trespass to chattels); *CompuServe, Inc. v. Cyber Promotions, Inc.*, 962 F.Supp. 1015 (S.D.Ohio 1997).[3] Case law suggests that trespass to chattels is actionable in Virginia. *See AOL v. IMS*, CA 98–11–A (citing *Vines v. Branch*, 244 Va. 185, 418 S.E.2d 890, 894 (1992)).

■ A trespass to chattels occurs when one party intentionally uses or intermed-

---

**3.** *See generally* Mark D. Robins, *Electronic Trespass: An Old Theory in a New Context*, 15 Computer Law. 1 (1998); Steven E. Bennett, *Canning Spam: Compuserve, Inc. v. Cyber Promotions, Inc.*, 32 U.Rich.L.Rev. 545 (1998).

dles with personal property in rightful possession of another without authorization. *AOL v. IMS,* CA 98–11–A (citing RESTATEMENT (SECOND) OF TORTS § 217(b)). One who commits a trespass to chattel is liable to the possessor of the chattel if the chattel is impaired as to its "condition, quality, or value." *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 218(b)). As articulated in *CompuServe,*

> [t]o the extent that defendants' multitudinous electronic mailings demand the disk space and drain the processing power of plaintiff's computer equipment, those resources are not available to serve [plaintiff] subscribers. Therefore, the value of that equipment to [plaintiff] is diminished even though it is not physically damaged by defendants' conduct.

962 F.Supp. at 1022. Plaintiff asserts that defendants intentionally used AOL's computers and computer network, which are tangible personal property. The transmission of electrical signals through a computer network is sufficiently "physical" contact to constitute a trespass to property. *See CompuServe,* 962 F.Supp. at 1021. Because AOL's Unsolicited Bulk E-mail Policy and Terms of Service prohibit the sending of such e-mails, defendants' actions were unauthorized.[4] Plaintiff asserts that its possessory interest in its computer equipment and business goodwill has been injured by defendants' unauthorized use of AOL's computers.

### Count VII: Common Law Conspiracy to Commit Trespass to Chattels and Violate Federal and Virginia Statutes

■ The elements necessary to establish the existence of a civil conspiracy are: (1) that two or more persons engaged in concerted action; (2) to accomplish some criminal or unlawful purpose, or some lawful purpose by some criminal and unlawful means; and (3) that actual damages resulted from something done by one or more of the conspirators in furtherance of the object of the conspiracy. *See Blackwelder v. Millman,* 522 F.2d 766 (4th Cir.1975).

■ Plaintiff alleges that defendants engaged in a conspiracy with one another, their site partners and another pornographic spammer (CN Productions and its president Jay Nelson) to commit trespass to chattels by transmitting unauthorized and unsolicited e-mail messages to AOL members. Plaintiff alleges that defendants' "site partners" program promised compensation to individuals who drove customers to defendants' Web sites and urged them to exploit the fact that the transmission of bulk e-mail is free to its sender. Plaintiff alleges that after conspiring with their "site partners," defendants attempted to "look the other way" while the site partners sent AOL members millions of unsolicited e-mail messages. Plaintiff alleges that defendants knowingly paid these site partners thousands of dollars for such transmissions. Plaintiff cites as evidence of this the fact that defendant LCGM paid a third party thousands of dollars and noted on checks made out to that party "5 million bulk e-mail" and "partial payment bulk email." Plaintiff argues that defendants' conspiracy with CN Productions is evidenced by Hyper–Text Links to CN Production's web sites in some of defendants' e-mails sent to AOL members. Plaintiff also contends that defendants purchased airplane tickets for CN Productions personnel to visit defendants' offices. Despite Judge Poretz' ruling, the facts are in dispute with respect to Count VII. Thus, the Court denies plaintiff's Motion for Summary Judgment on Count VII.

### Damages

AOL's claim for damages is unliquidated and therefore the Court must determine the issue at trial. Thus, the Court denies plaintiff's Motion for Summary Judgment on the issue of damages. However, the Court finds that AOL is entitled to injunctive relief preventing defendants from further distributing unsolicited bulk e-mail

---

4. Plaintiff alleges that this is further demonstrated by the fact that defendants continued sending bulk e-mails to AOL members after receiving cease and desist letters from AOL.

messages to AOL members. Defendants are further enjoined from using "aol.com" to send and distribute e-mail messages and from using the AOL network for the purpose of harvesting the addresses of AOL members. Defendants are to terminate any AOL membership. At trial, the Court can consider the parties' evidence and arguments regarding the appropriate terms of the injunction. In addition, pursuant to 15 U.S.C. § 1117(a), the Court may consider awarding attorney's fees for the Counts arising under the Lanham Act.

## Conclusion

For the reasons discussed fully in this Opinion, the Court grants plaintiff's Motion for Summary Judgment with respect to Counts I, II, III, IV, V, and VI. The Court denies plaintiff's Motion for Summary Judgment as to Count VII and as to the issue of damages, but finds that plaintiff is entitled to injunctive relief.

An appropriate Order will issue.