**AMERICA ONLINE, INCORPORATED,**
Plaintiff,

v.

**GREATDEALS.NET et al., Defendants.**

**No. Civ.A. 99–62–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

May 4, 1999.

Anthony Tobias Pierce, Akin, Gump, Strauss, Hauer & Feld, Washington, D.C., for plaintiff.

William Francis Krebs, Galland, Skaraseh & Garfinkle, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

LEE, District Judge.

THIS MATTER is before the Court on Plaintiff's Motion to Dismiss Defendants' Counterclaims.[1] The issues presented are: (1) whether Defendants' claim of discrimination in violation of the Federal Communications Act and the Telecommunications Act states a claim where an information service provider rather than a common carrier is the alleged perpetrator of discrimination; (2) whether Defendants' claim of monopolization and attempted monopolization in violation of antitrust laws constitutes a claim upon which relief can be granted; and (3) whether Defendants state a claim for tortious interference with contract and prospective contractual relations where the contract or prospective contractual relation is Defendants' relationship with Plaintiff's subscribers through unsolicited bulk e-mail transmission. For the reasons stated below, the Court grants Plaintiff's Motion to Dismiss and all Defendants' counterclaims are hereby dismissed.

### I. BACKGROUND

Defendant Martindale Empowerment ("Martindale") is a Virginia corporation in the business of providing commercial electronic-mail ("e-mail") service to advertisers. GreatDeals.Net is an Internet domain name belonging to Martindale Empowerment and GreatDeals is a trade name belonging to Martindale Empowerment. Until September 1998, Martindale's business included sending

---

1. Defendants filed counterclaims for violation of the Federal Communications Act, violation of the Telecommunications Act, antitrust violations, tortious interference with contract, intentional interference with prospective advantage and prospective contractual relations.

commercial electronic advertising over the Internet in the form of e-mail to e-mail addresses throughout the United States.

Plaintiff America Online, Inc. ("AOL") is the largest commercial online service with more than sixteen million individual subscribers across the United States. From late 1996 to September 1998, Martindale transmitted commercial e-mail messages advertising goods and services to AOL subscribers among others. Martindale marketed computers and computer-related equipment. Martindale claims that it ceased transmitting messages to AOL subscribers because AOL created various mechanisms to block these transmissions and succeeded in blocking virtually all such transmissions. Martindale contends that AOL has established itself as the only entity that can advertise to AOL subscribers.

AOL brought a complaint seeking damages and an injunction to prohibit Defendants from continuing their practice of sending unsolicited bulk e-mail ("UBE") advertisements to AOL subscribers. AOL charged Defendants with trespass to chattels, unjust enrichment, and violations of the Computer Fraud and Abuse Act, the Virginia Computer Crimes Act, and Washington State's Unsolicited Commercial Electronic Mail Act. AOL alleged that Defendants used deceptive practices to mask the source and quantity of their transmissions and thereby avoid AOL's filtering technologies. AOL further alleged that Defendants continued such transmissions after specific notice from AOL that their use of AOL's computer network was unauthorized and that AOL was receiving thousands of complaints from its subscribers who received Defendants' UBE.

Defendants admit that they transmitted UBE containing their advertisements for computer equipment to AOL subscribers. In response to the complaint, Defendants filed counterclaims complaining of AOL's acts and attempts to block the transmission of Defendants' UBE from reaching AOL subscribers. Specifically, Defendants claimed that AOL unlawfully discriminated against them in violation of the Federal Communications Act and the Telecommunications Act of 1996, that AOL violated antitrust laws by engaging in monopolization and attempted monopolization, and that AOL intentionally interfered with Defendants' contracts and prospective contracts with advertiser-clients.

AOL has filed a motion to dismiss all Defendants' counterclaims on various grounds. That is the subject of this memorandum opinion and order.

## II. STANDARD OF REVIEW ON A MOTION TO DISMISS

A court should grant a motion to dismiss for failure to state a claim when it appears that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Estate Constr. Co. v. Miller & Smith Holding Co.,* 14 F.3d 213, 217 (4th Cir.1994). The function of a motion to dismiss is to test the sufficiency of the complaint, not to resolve contested facts, the merits of the claim or the applicability of defenses. *Republican Party of North Carolina v. Martin,* 980 F.2d 943, 952 (4th Cir.1992); *Gasner v. County of Dinwiddie,* 162 F.R.D. 280, 281 (E.D.Va. 1995). In considering a rule 12(b)(6) motion to dismiss, the factual allegations in the complaint are presumed to be true, all reasonable inferences are made in favor of the non-moving party, and a count should be dismissed only where it appears beyond a reasonable doubt that recovery would be impossible under any set of facts which could be proven. *Martin,* 980 F.2d at 952; *Gasner,* 162 F.R.D. at 281.

## III. Violations of Federal Communications Act and Telecommunica-

### tions Act (Counts I and 11)[2]

Counts I and II allege that AOL discriminated against Defendants by blocking their ability to send UBE to hundreds of thousands of AOL's customers over AOL's computer network. Defendants contend that this blocking constitutes discrimination in violation of the Federal Communications Act of 1934[3] and its amendment in the Telecommunications Act of 1996. AOL argues that under section 230(c)(2)(A) of the Telecommunications Act, it is immune from civil liability for actions taken in good faith to restrict access to or availability of material that the provider or user considers to be "obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected."[4] AOL contends that section 230(c)(2) immunity applies here because AOL is an interactive computer service within the meaning of the statute and because UBE is "harassing" and "otherwise objectionable." AOL claims that UBE is objectionable because it typically contains advertisements for pornography or for fraudulent "get rich quick" schemes that AOL members consider offensive and harassing, because it is transmitted indiscriminately to AOL users regardless of age, and because it slows e-mail processing times and requires members to spend time opening and discarding unwanted solicitations.

AOL further argues that it is not subject to the anti-discrimination provisions of the communications laws because AOL is not a common carrier. AOL claims that it is not a common carrier because it does not offer telecommunications services; rather, it offers information services which are distinguishable as found by Congress and the Federal Communications Commission ("FCC").

█] The Court holds that AOL is not a common carrier and thus is not subject to the anti-discrimination provisions of the Federal Communications Act and the Telecommunications Act.[5] Under the Telecommunications Act, a common carrier is defined as "any person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or in interstate or foreign radio transmission of energy, except where reference is made to common carriers not subject to this chapter; but a person engaged in radio broadcasting shall not, insofar as such person is so engaged, be deemed a common carrier." 47 U.S.C. § 153(10) (Supp.1998). An interactive computer service is defined as "any information service, system, or access

---

**2.** Because these two counts are substantially similar, the Court will consider them together.

**3.** Section 202(a) of the Federal Communications Act provides in pertinent part:
 It shall be unlawful for any common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or in connection with like communication service, directly or indirectly, by any means or device, or to make or give any undue or unreasonable preference or advantage to any particular person, class of persons, or locality, or to subject any particular person, class of persons, or locality to any undue or unreasonable prejudice or disadvantage.
 47 U.S.C. § 202(a) (1991).

**4.** Section 230(c)(2) provides in full: No provider or user of an interactive computer service shall be held liable on account of—

 (A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or
 (B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1).
 47 U.S.C. § 230(c)(2) (Supp.1998).

**5.** The Court also notes that even if AOL were subject to the anti-discrimination provisions, it is not clear that Defendants could prevail on a discrimination claim where they have not shown that AOL treats other entities that transmit UBE any differently than it treated Defendants.

software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." *Id.* § 230(e)(2). These two definitions clearly differ. Yet, Congress has not provided clarification on whether an information service provider is a common carrier.

▮▮ Where a statute is silent or ambiguous with respect to a specific issue, the Court must defer to the agency's interpretation of the statute unless it is an impermissible construction or manifestly contrary to the statute. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *City of Dallas v. Federal Communications Comm'n,* 165 F.3d 341, 346–47 (5th Cir.1999); *Kennedy v. Shalala,* 995 F.2d 28, 30 (4th Cir.1993). In a 1998 Report to Congress, the FCC concluded that Congress intended the categories of telecommunications service and information service to be mutually exclusive, similar to the mutual exclusivity of basic and enhanced service. *See* 13 F.C.C.R. 11501 ¶ 13 (Apr. 10, 1998). The FCC stated that information service providers generally do not provide telecommunications service. *Id.* The FCC found that Congress intended to maintain a regime in which information service providers are not subject to regulation as common carriers merely because they provide their services "via telecommunications." *Id.* In particular, the FCC opined:

> The Internet and other enhanced services have been able to grow rapidly in part because the Commission concluded that enhanced service providers were not common carriers within the meaning of the Act. This policy of distinguishing competitive technologies from regulated services not yet subject to full competition remains viable.... We believe that Congress, by distinguishing "telecommunications service" from "information ser-

vice," and by stating a policy goal of preventing the Internet from being fettered by state or federal regulation, endorsed this general approach.

*Id.* ¶ 95 (footnotes omitted).

There is further support for the conclusion that information service providers such as AOL are not common carriers and thus are not subject to the same regulation as a common carrier or telecommunications carrier. If Congress had intended to include interactive computer services or information service providers like AOL in the definition of common carrier, it would have so indicated. However, section 230(e)(2) demonstrates that Congress recognized the different type of service an interactive computer service provides and constructed a definition to cover such providers. AOL is an interactive computer service because it provides access and software that enables access by multiple users both to AOL's computer servers and the Internet. *See Zeran v. America Online, Inc.,* 129 F.3d 327, 330 n. 2 (4th Cir.1997) (treating AOL as an interactive service provider); *Blumenthal v. Drudge,* 992 F.Supp. 44, 49–50 (D.D.C.1998) (same). Furthermore, the Telecommunications Act sets forth Congress's explicit desire to have the Internet remain without regulation by federal or state government. *See e.g.,* 47 U.S.C. § 230(b)(2) ("It is the policy of the United States ... to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation."). In addition, FCC Chairman William Kennard as well as other FCC representatives have all stated that the Internet will not be regulated by the FCC. *See e.g.,* Jeannine Aversa, *FCC Won't Regulate Internet. Really.,* Wash. Post, Mar. 12, 1999, at E3 (citing FCC Chairman William E. Kennard, Remarks Before Legg Mason in Washington, DC (Mar. 11, 1999)). In fact, neither party has identified a case where a federal or state court has applied common carrier regulation-either generally or specifically

on the discrimination provision-to an information service provider. Thus, this Court will not be the first to do so, especially in the face of contrary direction by Congress and the FCC.

Having found that AOL is not a common carrier and dismissing Counts I and II on those grounds, the Court does not reach the immunity argument.

## IV. Violations of Antitrust Laws (Counts III & IV)

AOL assumed in its briefs and Defendants confirmed in their opposition that the antitrust violations are based on the Sherman Act, 15 U.S.C. § 2.

### A. Monopolization

AOL argues that the antitrust violation claims should be dismissed because Defendants cannot sufficiently allege an element essential to all their claims-monopoly power by AOL in a relevant market. Defendants contend that whether AOL has engaged in monopolization is a question of fact that cannot be resolved at the motion to dismiss stage. Defendants claim that the relevant market is e-mail advertising and that AOL controls a distinct sub-market based on the Internet subscribers who are accessed through AOL facilities.

To prevail on a monopolization claim, a party must show: (1) possession of monopoly power in a relevant market; (2) willful acquisition or maintenance of that power in an exclusionary manner; and (3) causal antitrust injury. *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 596 n. 19, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985) (quoting *United States v. Grinnell*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966)); *Advanced Health–Care Servs., Inc. v. Radford Community Hosp.*, 910 F.2d 139, 147 (4th Cir.1990). Mere allegations that a party has violated the antitrust laws are insufficient to survive a motion to dismiss under rule 12(b)(6); the party must plead sufficient facts to establish each element and cannot

use terms which are conclusory. *Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 220–21 (4th Cir.1994).

### 1. Relevant Market

AOL argues that Defendants have failed to allege a viable relevant market and that several courts have granted motions to dismiss where a relevant market is not alleged with references to the availability of interchangeable alternatives or cross-elasticity of demand. *See e.g., Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1385, 140 L.Ed.2d 645 (1998); *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 345 (N.D.Ill. 1997) (proposed market definition held legally inadequate because it is improper to define a market in terms of a single class of customers); *Deep South Pepsi–Cola Bottling Co. v. Pepsico, Inc.*, No. 88 CIV 6243, 1989 WL 48400, at *8–9 (S.D.N.Y. May 2, 1989) (manufacturer's monopoly over distribution of its own product cannot form basis of valid monopolization claim); *Shaw v. Rolex Watch, U.S.A., Inc.*, 673 F.Supp. 674, 678–79 (S.D.N.Y.1987) (refusing to restrict relevant market to company's trademarked product). Defendants argue that the proper market for purposes of this case is e-mail advertising and that Internet subscribers who are accessed through the facilities which AOL controls constitute a distinct sub-market. Defendants claim that e-mail advertising is a different medium than other forms of advertising and it is addressed to a demographically select portion of the population. The Court holds that Defendants' monopolization claim should be dismissed for failure to plead a relevant market.

A relevant market has two dimensions: (1) the relevant product market, which identifies the products or services that compete with each other, and (2) the relevant geographic market, which identifies the geographic area within which competition takes place. *Brown Shoe Co. v. United States*, 370 U.S. 294, 324, 82 S.Ct.

1502, 8 L.Ed.2d 510 (1962); *Bathke v. Casey's Gen. Stores*, 64 F.3d 340, 345 (8th Cir.1995); *see also ABA Section of Antitrust Law, Antitrust Law Developments* 493 (4th ed.1997). The outer boundaries of a relevant market are determined by reasonable interchangeability of use. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 482, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Reasonable interchangeability of use refers to consumers' practicable ability to switch from one product or service to another. *Antitrust Law Developments, supra*, at 500. Thus, the Court must consider whether there are any substitutes for Defendants' e-mail advertising to AOL subscribers.

██ In defining the relevant product or service market, the Court finds that there are reasonable substitutes for advertising through AOL. Thus, it must reject Defendants' proposed relevant market. First, the Court rejects Defendants' attempt to restrict the market to e-mail advertising. There are numerous substitutes for e-mail advertising. There are numerous substitutes for e-mail advertising, some of which are less expensive, including use of the World Wide Web, direct mail, billboards, television, newspapers, radio, and leaflets, to name a few. Even if the Court restricted the market to e-mail advertising, interchangeable substitutes include other paid e-mail subscription services such as Microsoft Network or Prodigy, or free e-mail services like Hotmail and Yahoo. *See Cyber Promotions, Inc. v. America Online, Inc.*, 948 F.Supp. 456, 459 (E.D.Pa.1996) (citing *American Civil Liberties Union v. Reno*, 929 F.Supp. 824, 832–33 (E.D.Pa. 1996)) (noting that computer users have a wide variety of avenues by which to access the Internet, including the major national commercial online services such as America Online, CompuServe, the Microsoft Network, or Prodigy); Leslie Walker, *Rivals Cede Throne to AOL*, Wash. Post, Apr. 8, 1999, at El (naming some of the 4,000 companies providing dial-up access to the Internet). The Court will not restrict the market to AOL subscribers because it is improper to define a market simply by identifying a group of consumers who have purchased a given product. *See Rohlfing*, 172 F.R.D. at 345. Instead, the market consists of the array of "interchangeable" products that those consumers confronted when making their product selection. Here, AOL subscribers could have chosen another paid e-mail service or a free e-mail service. Thus, those entities are part of the relevant market. This is not a case like *Eastman Kodak* where a single brand of product or service constitutes a relevant market because it is unique. In this case, there are other e-mail services that provide the same type of service as AOL. Defendants could have advertised through another e-mail service and still reached the Internet-accessing public.

With respect to the relevant geographic market in which competition takes place, the Court finds that the Internet cannot be defined with outer boundaries. It is not a place or location; it is infinite. The Internet is a "giant network which interconnects innumerable smaller groups of linked computer networks." *Cyber Promotions, Inc.*, 948 F.Supp. at 459. The network "allows any of literally tens of millions of people with access to the Internet to exchange information." *Id.* Defendants ignore the fact that they have multiple means of advertising their computer equipment to the Internet-accessing public. The geographic market may not be restricted to AOL subscribers not only because there are other persons with access to the Internet, but also because there are other means of advertising to those persons and to AOL subscribers.

While proper market definition is often determined after a factual inquiry into the commercial realities faced by consumers, *Eastman Kodak Co.*, 504 U.S. at 482, 112 S.Ct. 2072, an antitrust plaintiff must still allege a legally sufficient relevant market, *see Rohlfing*, 172 F.R.D. at 347 n. 23. "Where the relevant market proposed by the plaintiff is not even *alleged* to encom-

pass all interchangeable substitute products, the market is legally (rather than factually) insufficient, and a motion to dismiss is appropriate." *Id.; see also Queen City Pizza, Inc.,* 124 F.3d at 430; *Lee v. Life Ins. Co.,* 23 F.3d 14, 18–19 (1st Cir. 1994) (holding that inadequate allegations regarding scope of relevant market are proper grounds for rule 12(b)(6) dismissal); *TV Communications Network, Inc. v. Turner Network Television, Inc.,* 964 F.2d 1022, 1025 (10th Cir.1992). Thus, dismissal here is appropriate because Defendants' proposed market definition fails legally due to the lack of interchangeable substitutes.

### 2. Exclusionary or Anti-Competitive Conduct

 The second element of a monopolization claim requires that Defendants prove willful acquisition or maintenance of the monopoly power in an exclusionary manner. *Aspen Skiing Co.,* 472 U.S. at 596 n. 19, 105 S.Ct. 2847. Whether conduct is exclusionary is not defined by the effect of such conduct on Defendants. *Id.* at 605, 105 S.Ct. 2847. The Court should consider the impact of such conduct on consumers and competitors. *Id.* If Defendants show that AOL has harmed consumers and competition by making a short-term sacrifice in order to further its exclusive, anti-competitive objectives, then Defendants establish predation by AOL. *Advanced Health–Care Servs., Inc.,* 910 F.2d at 148. Exploiting competitive advantage that is legitimately available, however, does not amount to predatory conduct, even for a firm with monopoly power. *Id.* at 147 n. 14. Thus, general intent to gain monopoly power. *Id.* at 147 n. 14. Thus, general intent to gain monopoly status is not sufficient absent some predatory conduct.

 Here, Defendants make no showing of harm to consumers or to AOL's competition.[6] Furthermore, Defendants do not point to any exclusive, anti-competitive objectives other than AOL's requirement that advertisers pay for the right to advertise on AOL's network to AOL's subscribers. Even if the Court views AOL as a monopoly power in the Internet access or information services market because AOL has 16 million subscribers, there is no proof of exclusionary conduct by AOL. Defendants' allegation that AOL discouraged other information service providers from permitting Martindale to advertise on their networks does not amount to anti-competitive conduct. Defendants fail to allege or demonstrate any impact of the purported anti-competitive, conduct on consumers or competitors. Indeed, Defendants' claim seems to rest on the fact that AOL has been successful in the information services market. Where, as here, there is no predatory conduct and a successful entrepreneur competing in the infinite Internet market, there can be no claim of monopolization. Thus, Defendants cannot prevail on this aspect of the monopolization claim and dismissal is appropriate.

### 3. Causal Antitrust Injury

 Defendants claim that their antitrust injury is shown by the fact that AOL's actions have put Defendant Martindale out of business. This is insufficient to prove this element of a monopolization claim.

In *Advanced Health–Care Services, Inc.,* the Fourth Circuit reversed a district court's dismissal of a monopolization claim for failure to allege a causal antitrust injury. 910 F.2d at 149. The Court found that the plaintiff made colorable allegations that it had lost income as a direct result of the defendants' anti-competitive actions and monopolization of the relevant medical equipment markets. *Id.*

---

6. It is important to note that Defendants cannot claim harm as a competitor of AOL because Defendants do not compete in the same market as AOL. Defendants are advertisers and sellers of computer equipment whereas AOL sells information services.

In the instant case, Defendants claim, "By monopolizing the market for transmission of commercial electronic messages to its subscribers, AOL has caused substantial damage to Martindale in an amount which will be proven at trial." *Counterclaim, Count III, ¶ 25.* This is not a sustainable allegation of causal antitrust injury. As stated above, Defendants fail to allege any anti-competitive conduct. Moreover, Defendants are not competitors of AOL because they provide different products and services. Thus, it would be impossible for Defendants to base their injury on anti-competitive conduct even if some were alleged. Furthermore, even if Defendants had alleged anti-competitive conduct, there is no allegation of fact supporting a connection between Defendants' loss of business and AOL's conduct. Under *Advanced Health–Care Services, Inc.,* Defendants must allege lost income as a direct result of monopolization of the relevant market. As established above, Defendants have not alleged a relevant market, so they cannot demonstrate the requisite monopolization of the relevant market necessary to show causal antitrust injury. Thus, Defendants have failed to properly allege causal antitrust injury.

In sum, Defendants have failed to state a claim for monopolization under the antitrust laws because they have not properly alleged a relevant market, anti-competitive conduct, or causal antitrust injury.

### B. Attempted Monopolization

■ To establish attempted monopolization, a party must show: (1) specific intent to monopolize the market; (2) antitrust or predatory conduct designed to further that intent; and (3) a dangerous probability of success. *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 456, 113 S.Ct. 884, 122 L.Ed.2d 247 (1993); *Abcor*

*Corp. v. AM Int'l, Inc.,* 916 F.2d 924, 926 (4th Cir.1990).

### 1. Specific Intent to Monopolize

Defendants claim intent may be inferred from the acts of the party allegedly attempting to monopolize. Defendants contend that such evidence is difficult to obtain without discovery. The only evidence thus far is that AOL blocked Defendants' advertisements, refused to accept compensation from Defendants for the right to advertise to AOL subscribers on AOL's network,[7] and allegedly threatened to stop dealing with other entities who do business with Defendants.

■ Unlike monopolization, which requires intent only, attempted monopolization requires proof that the accused party had a "specific intent to destroy competition or build monopoly." *Abcor Corp.,* 916 F.2d at 927. A desire to increase market share or even to drive a competitor out of business through vigorous competition on the merits is not sufficient. *Id.* The monopolizing party must have sought to create a monopoly by circumventing the competitive process. *Id.* The requisite intent may be shown through direct evidence or through inference by showing anti-competitive practices. *Id.*

In *Abcor Corp.,* the Court held that certain deposition statements about acquiring business through competition were not sufficient to constitute direct evidence of specific intent to monopolize. 916 F.2d at 927. The Court also rejected the plaintiff's attempt to infer specific intent from a series of anti-competitive acts including discriminatory and deceptive pricing, misuse of confidential financial and customer information, selective denial of parts, lies and misinformation, and hiring of plaintiff's employees. *Id.* The Court concluded that none of these actions rose to the level of illegal competition. *Id.*

7. There is no evidence that AOL prohibited Defendants from participating in the normal application process for businesses that want to advertise on AOL's work. Defendants did

not apply; instead, they advertised through UBE then offered to pay AOL after being caught.

■ If dismissal was appropriate in *Abcor Corp.*, it is more than appropriate here where Defendants have failed to allege any conduct that would support an inference of specific intent. The only anti-competitive practice that Defendants allege is that AOL allegedly threatened other providers who dealt with Defendants with lack of access to AOL subscribers if they did not stop dealing with Defendants. Even viewing that allegation in the light most favorable to Defendants as the Court must, it is insufficient to support an inference of specific intent. AOL's vigorous attempts to protect its subscribers from UBE and to prevent Defendants from circumventing AOL's technical means to prevent the transmission of UBE to its subscribers do not show intent to monopolize. *See generally America Online, Inc. v. LCGM, Inc.*, No. Civ.A 98–102–A, 1998 WL 940347, at *5–7 (E.D.Va. Nov.10, 1998) (holding that the practice of sending UBE to AOL subscribers without AOL's authorization and using techniques to avoid AOL's blocking mechanisms constitutes a common law trespass to chattels as well as a violation of statutory computer fraud laws); *America Online, Inc. v. IMS et al.*, 24 F.Supp.2d 548, 550–51 (E.D.Va.1998) (same).

### 2. Anti–Competitive or Predatory Conduct

As established in the discussion above on monopolization, Defendants have not alleged any anti-competitive conduct. Thus, there is nothing to show that AOL acted to further a specific intent to monopolize. This factor not satisfied, a motion to dismiss the claim for attempted monopolization is appropriate. *See Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684–85 (4th Cir.1989).

### 3. Dangerous Probability of Success

■ To determine whether there is a dangerous probability of success in monopolizing the market, courts often consider the relevant market and a participant's ability to lessen or destroy competition in that market. *Spectrum Sports*, 506 U.S. at 456, 113 S.Ct. 884. The Court holds that in this case there cannot be a probability that AOL will monopolize the information services market because the Internet is infinite. Indeed, the Court is unable to measure AOL's market share because the market in which AOL participates is not defined. The Internet is not regulated and an entrant's ability to participate in the market and offer services like that offered by AOL is without boundary.[8] Thus, even if the Court determined AOL's market share to be relatively high, there is no dangerous probability of successful monopolization where there are no substantial barriers to entry and there are other factors that make the exercise of monopoly power unlikely. *See Dial A Car, Inc. v. Transportation, Inc.*, 82 F.3d 484, 486–87 (D.C.Cir.1996) (finding no unlawful attempt to monopolize corporate car service market where there is nothing to indicate that monopolization of the market is even possible); *Indiana Grocery, Inc. v. Super Valu Stores, Inc.*, 864 F.2d 1409, 1414–15 (7th Cir.1989) (finding a 50% market share insufficient to show dangerous probability of successful monopolization where plaintiff conceded that defendant could never control the market); *Deauville Corp. v. Federated Dep't Stores*, 756 F.2d 1183, 1191 (5th Cir.1985) (upholding directed verdict where ease of entry precluded inference of dangerous probability of success); *Advanced Health–Care Servs., Inc. v. Giles Mem'l Hosp.*, 846 F.Supp. 488, 497 (W.D.Va.1994) (finding a 50% market share is insufficient where evidence of

8. *See Cyber Promotions, Inc.*, 948 F.Supp. at 459 ("No single entity-academic, corporate, governmental, or nonprofit-administers the Internet. It exists and functions as a result of the fact that hundreds of thousands of separate operators of computers and computer networks independently decided to use common data transfer protocol to exchange communications and information with other computers (which in turn exchange communications and information with still other computers).").

predatory intent and conduct is weak and entry is easy).

Because Defendants can establish none of the factors necessary to show attempted monopolization, dismissal of this claim is appropriate.

### C. Denial of Essential Facilities

 The third and fourth counts of Martindale's counterclaim are for denial of access to an essential facility. To plead monopolization through the "essential facilities" doctrine, Defendants must allege (1) control of the essential facility by a monopolist; (2) a competitor's inability practically or reasonably to duplicate the essential facility; (3) the denial of the use of the facility to a competitor; and (4) the feasibility of providing the facility to competitors. *Laurel Sand & Gravel, Inc. v. CSX Transp., Inc.*, 924 F.2d 539, 544 (4th Cir.1991); *Advanced Health–Care Servs., Inc.*, 910 F.2d at 150; *see also MCI Communications Corp. v. American Tel. & Tel. Co.*, 708 F.2d 1081, 1132–33 (7th Cir.1983). "An 'essential facility' is one which is not merely helpful but vital to the claimant's competitive viability." *Cyber Promotions, Inc.*, 948 F.Supp. at 463.

 Here, Defendants allege that AOL controls an essential facility for access to all persons who obtain access to the Internet through AOL. Defendants contend that there is no other way to obtain access to such persons other than through nodes controlled by AOL. Defendants allege that AOL has used its control of Internet nodes to prevent Martindale from transmitting commercial electronic messages to AOL subscribers. At the same time, Defendants contend that AOL does transmit commercial electronic messages for non-AOL advertisers, and thus monopolizes the market for such commercial electronic messages to its subscribers.

On the face of the pleadings, Martindale seems to sufficiently allege element one—that AOL controls an essential facility for access to all AOL subscribers. Martindale fails, however, to effectively plead elements two, three, and four of the essential facilities doctrine.

Elements two, three, and four require that the monopolist and the plaintiff are competitors. *Advanced Health–Care Servs., Inc.*, 910 F.2d at 151; *Cyber Promotions, Inc.*, 948 F.Supp. at 461 (noting that it is unlikely that plaintiff and AOL are competitors even though plaintiff alleged such). The essential facilities doctrine is inapplicable where the alleged monopolist and the plaintiff do not compete. *Ferguson v. Greater Pocatello Chamber of Commerce, Inc.*, 848 F.2d 976, 983 (9th Cir.1988). In the present case, Martindale fails to allege or plead any facts from which the Court could infer that Defendants and AOL are competitors.

In *Advanced Health–Care Services, Inc.*, the Court found that the plaintiff stated the elements of the essential facilities doctrine in order to survive a 12(b)(6) challenge. 910 F.2d at 151. In that case, a durable medical equipment supplier brought an antitrust action against certain hospitals and competitors. *Id.* at 142. The plaintiff alleged that the hospitals exclusively marketed a competitor's product in return for a financial stake in those sales. *Id.* The Fourth Circuit noted the hospital's financial stake, but reserved ruling on whether this was enough to make the hospital a competitor of the plaintiff. *Id.* at 151.

In this case, however, Martindale has not alleged that AOL is a competitor with Martindale. Defendants do not allege that AOL had any financial stake in any other non-AOL advertiser, which would imply AOL's status as a competitor. *See Cyber Promotions, Inc.*, 948 F.Supp. at 461 (stating that Cyber and AOL are not competitors where AOL's business is private commercial online service and Cyber is an advertising agency).

The pleadings also have another defect as to element two. Martindale failed to plead that it could not reasonably duplicate or pursue a reasonable alternative to the

essential facility. In fact, Martindale even concedes that in "rare" cases persons such as Martindale can obtain access to such persons other than through nodes controlled by AOL. As stated by another court, "Internet users are not a 'captive audience' to any single service provider, but can transfer from one service to another. . . ." *CompuServe Inc. v. Cyber Promotions, Inc.*, 962 F.Supp. 1015, 1025 (S.D.Ohio 1997). Anyone can acquire the computer equipment necessary to provide Internet access services on a smaller scale with a relatively minor capital investment. *Id. See also Cyber Promotions, Inc.*, 948 F.Supp. at 463 (listing various means by which an advertiser can reach AOL subscribers). As argued by AOL, Martindale could develop its own commercial online system or advertising web site and charge a competitive rate. *Id.* Due to the other means by which Martindale could reach AOL subscribers, Martindale cannot properly plead element two of the essential facilities doctrine.

A cursory view of the pleadings might suggest that Martindale does plead elements three and four. As to element three, Martindale alleges that it has been denied access to persons who obtain access to the Internet through AOL.[9] Although Martindale does not specifically allege the feasibility of providing the facility to competitors as required for element four, the pleadings do allege that AOL transmits commercial messages for other non-AOL advertisers. However, because Martindale has failed to allege specifically that AOL is a competitor or to allege any facts that suggest AOL is a competitor, the counterclaim does not effectively plead Counts III and IV.

Because elements two, three, and four of the essential facilities doctrine have not been plead, Counts III and IV are dismissed.

### V. Tortious Interference Claims (Counts V, VI, & VIII)

Counts V and VIII of the Counterclaim allege tortious interference with contract. In Count V, Defendants allege that AOL interfered with the contractual relationship between Defendants and their advertiser-client, who sought direct Internet marketing services from Defendants including commercial bulk e-mail, e-mail address collection, and e-mail services. Defendants sent their clients' advertisements to substantial numbers of e-mail addresses. Count VIII of the Counterclaim alleges that AOL interfered with the contractual relationship between Martindale and certain Internet access providers. According to Defendants, they contracted with Internet access providers to connect their computers to the Internet, but the providers terminated their service after being threatened by AOL. Count VI claims intentional interference with prospective advantage and prospective contractual relations. In this count, Defendants claim that AOL interfered with contractual and business relationships with potential advertiser-clients by blocking Defendants' access to the e-mail addresses of AOL subscribers.

AOL contends that Defendants failed to state a claim because they have not and cannot allege two critical elements-a valid contractual relationship and improper means of interference. In response, Defendants argue that they can prove improper means because AOL's blockade of Defendants' e-mail messages to AOL subscribers was wrongful.

 In order to plead a case of tortious interference with contract or contract expectancy, the plaintiff must allege: (1) the existence of a contract or contract

---

**9.** AOL contends it did not deny Defendants access to AOL subscribers. AOL submits that Martindale can advertise to AOL subscribers, *after* applying for the right and paying the required fee. On a motion to dismiss, the Court must accept the pleadings as true, so the Court accepts Martindale's averment that AOL has prevented Martindale from transmitting commercial electronic messages to AOL subscribers.

expectancy; (2) the defendant's knowledge thereof; (3) intentional interference with the contract or expectancy; (4) use of improper means or methods to interfere; and (5) loss suffered by the plaintiff resulting from disruption of the contract or contract expectancy. *Maximus, Inc. v. Lockheed Info. Management Sys. Co.,* 254 Va. 408, 493 S.E.2d 375, 378 (1997); *see also Perk v. Vector Resources Group, Ltd.,* 253 Va. 310, 485 S.E.2d 140, 143 (1997).[10] "Tortious interference" means only that the interference was intentional and improper under the circumstances, not that the improper methods used were inherently illegal or tortious. *Maximus,* 493 S.E.2d at 379.

■ The Court holds that Martindale did not have any valid contractual relationship with its advertiser-clients, AOL, or the AOL subscribers, whereby Defendants would have authorization to send e-mail advertisements to AOL subscribers over AOL's network. Under Virginia contract law, a contract made in violation of a statute is void. *Taylor Thiemann & Aitken v. Hayes,* 244 Va. 198, 418 S.E.2d 897, 899 (1992). Furthermore, when a plaintiff must rely on the illegal contract to establish his cause of action, he may not recover for damages otherwise due him. *Id.* As AOL notes, this Court has already held that the practice of sending UBE, unauthorized by AOL, and using techniques to evade AOL's blocking mechanisms violates the Computer Fraud and Abuse Act and the Virginia Computer Crimes Act, and constitutes a trespass to chattels. *See America Online, Inc. v. LCGM, Inc.,* 46 F.Supp.2d 444, 449–52 (E.D.Va. 1998); *America Online, Inc. v. IMS et al.,* 24 F.Supp.2d 548, 550–51 (E.D.Va.1998). Thus, any contract or business expectancy based on the sending of unauthorized UBE would be contrary to case law and statute and thereby illegal. Consequently, Defendants' alleged contracts with their advertiser-clients to transmit UBE to AOL subscribers is illegal and cannot be the basis for an interference with contract claim. Defendants had no valid expectancy to contract with prospective advertiser-clients regarding an illegal contract to transmit UBE. Thus, Defendants cannot prove the first element of tortious interference. Accordingly, Martindale cannot establish AOL's knowledge, AOL's intentional interference with, or Martindale's loss of a contract or contract expectancy which does not exist.

Assuming a legitimate contract or expectancy existed, Defendants' failure to allege that AOL engaged in improper means or methods is another ground on which to grant the motion to dismiss. Even if the pleadings contained such language, Defendants cannot plead facts which demonstrate that AOL engaged in improper means or methods to interfere with Defendants' alleged contractual relationships or business expectancy. First, blockage of UBE is encouraged by federal law. *See* 47 U.S.C. § 230(c)(2). Second, this Court has issued two published decisions which imply that AOL has a right to prevent trespass to chattels by blocking the transmission of UBE to its subscribers. *See LCGM, Inc.,* 46 F.Supp.2d 444, 446–47; *IMS et al.,* 24 F.Supp.2d at 548. Because Defendants cannot prove a legal contract or improper means of interference by AOL, the Court grants the motion to dismiss the three tortious interference counts.

## VI. Conclusion

For the reasons stated above, Plaintiff's Motion to Dismiss Defendants' Counter-

---

10. Martindale contends that the Court should rely on *Perk* for the elements of tortious interference with contract as opposed to tortious interference with contract expectancy as stated in *Maximus.* In *Perk,* the Virginia Supreme Court listed four elements of tortious interference with contract. 485 S.E.2d at 143. Because the court did not incorporate "improper means" as an element, Martindale seems to imply that improper means is not relevant. However, the *Perk* Court also stated that in order to present a prima facie case of tortious interference, the plaintiff must allege and prove that the defendant employed improper methods. *Id.* Thus, the elements are the same for both causes of action.

claims is granted. Under some circumstances, the Court might grant leave to amend where a counterclaim is deficiently plead. In this case, however, amendment of the counterclaim would be futile. The only claims that arguably might be aided in some way by amendment are the antitrust violations. Martindale is not a competitor of AOL and there are no facts supporting allegations of anti-competitive conduct. Thus, even with an amendment, Martindale cannot establish a claim for monopolization or attempted monopolization. Similarly, Martindale cannot demonstrate denial of an essential facility because access to AOL is not required to advertise to AOL subscribers or the rest of the information services market. As such, the motion to dismiss the counterclaims without leave to amend must be granted.

The Clerk is directed to forward a copy of this Order to counsel of record.